No. 9082.

SMITH *v*. THE PEOPLE.

1. HUSBAND AND WIFE—*Common Law Marriage—Evidence.* Prosecution for non support under Laws of 1911 c. 179. The prosecutrix and accused had cohabited as man and wife for more than six years. At the beginning of this relation the accused was already married to another woman. Four years later this lady secured a divorce. During all their cohabitation the accused invariably addressed the prosecutrix as his

wife and introduced her as such to all whom he met; and they were regarded by all their acquaintances as husband and wife. *Held,* a common law marriage.

2. —— *Express Agreement not Necessary.* An agreement, in words, to be or become husband and wife is not necessary to a common law marriage. The agreement may be inferred from cohabitation and report.

3. CRIMINAL LAW—*Error—Record—Effect.* The record reciting an arraignment and plea is received in the court of review as importing absolute verity.

4. JUVENILE COURT—*Jurisdiction* The Juvenile Court is a court of record, and, under sec. 4 of c. 179 of the Acts of 1911, has jurisdiction of an information for the non-support of the wife of the accused.

*Error to Denver Juvenile Court, Hon. Ben B. Lindsey, Judge.*

Mr. RICE W. MEANS, Mr. PAUL DELANEY, for plaintiff in error.

Hon. LESLIE E. HUBBARD, attorney general; Mr. CHARLES ROACH, Miss CLARA RUTH MOZZOR, Mr. BERTRAM B. BESHOAR, assistant attorney general, for people.

Opinion by Mr. Justice Allen:

THE plaintiff in error, hereinafter called the defendant, was convicted under the non-support act (Chapter 179, Session Laws, 1911), for his desertion of and willful failure to provide reasonable support for his wife.

The main contention of the defendant is that the evidence fails to establish that there ever had been a marriage between the defendant and the prosecuting witness, the latter being named in the information as the defendant's wife.

The testimony discloses the following facts, which are not disputed. The prosecuting witness was orphaned at the age of nine years. She then made her home with her sister at Colorado Springs. When she was between fifteen and sixteen years of age she met the defendant. About one year after the defendant and the prosecuting witness became acquainted with each other they began to cohabit, and live together as husband and wife, and continued to do so for

a period of about six and one-half years, residing in the city and county of Denver during the last two and a half years of this period. For a short time these parties lived with the defendant's mother, and during the rest of the time they kept themselves separate and apart from others. At different times they were visited by their acquaintances, and by the defendant's relatives. During all of the time that they lived together it was the defendant's custom to introduce the prosecuting witness to those whom they met, and to their neighbors, as his wife.

At the beginning of their cohabitation the defendant was a married man, having another wife then living. This fact was by him kept secret from the prosecuting witness. She did not become aware of the defendant's prior marriage until some time between one and two years after she began to live with him, when she received a letter from his former wife.

On the 27th of March, 1914, which was more than two years before the defendant and the complaining witness ceased to live and cohabit together, the defendant's former wife was granted a divorce from him.

It appears to be taken for granted, in the argument on both sides, that after the defendant was divorced from his former wife, there was no longer any obstacle to a valid marriage between the defendant and the prosecuting witness. There having been no ceremonial marriage, the sole question in this connection is whether or not a common law marriage was entered into by the parties, after the defendant was divorced from his former wife.

After the granting of the divorce, as well as before, the defendant and the complaining witness were generally reputed to be, and regarded as, husband and wife. It does not appear from the testimony that at any time they were considered otherwise than as husband and wife, by any person who knew that they were living together. Before the granting of the divorce above mentioned, the parties in question lived in light housekeeping rooms, hotels and rooming houses. After such divorce, however, they made

their home in a cottage all to themselves for a time. Here they entertained friends, who recognized and treated the prosecuting witness as the defendant's wife. After the divorce from his former wife, the defendant continued his custom of introducing the complaining witness to people whom they met as his wife. The defendant spoke of her as his wife, and the defendant's sister referred to the prosecuting witness as her "brother's wife."

The parties in question lived and cohabited together continuously for over two years after defendant's former wife obtained her divorce, and until a short time before this proceeding was instituted. It appears that the cohabitation terminated by reason of the defendant's leaving the prosecuting witness, on which occasion he stated, in effect, that he would not "be back," and that he "got another woman." The record also discloses that during the period of their cohabitation the parties regarded and mutually acknowledged each other as husband and wife. Letters to the prosecuting witness from the defendant himself, and letters from other persons, were referred to in the testimony as having been so addressed as to show that the respective writers regarded this witness as a married woman, and the wife of the defendant.

The facts and circumstances hereinbefore narrated constituted evidence of marriage. The proof of marriage by cohabitation and repute has been recognized in many cases in the United States. *White v. White,* 82 Calif. 427, 18 R. C. L. 429. The defendant insists, however, that the evidence is insufficient to show that the parties ever *agreed* to be husband and wife. Mutual consent is one of the essentials of a valid marriage at common law. There is no direct evidence in this case that the parties agreed *in words to* become husband and wife, but mutual consent may be inferred from cohabitation and repute, of which there is ample evidence in this case. *White v. White, supra.* Furthermore, the agreement need not have been in words. In Bishop on Marriage, Divorce and Separation, Sec. 320, the author says that "not even words are in all circumstances

necessary.   Or it is sufficient that the parties in language mutually understood, or in any way declaratory of intention, accept each other as husband and wife." In 18 R. C. L. 429, Sec. 57, citing among other cases, *Klipfel v. Klepfel,* 41 Colo. 40, 92 Pac. 26, 124 Am. St. Rep. 96, and note, it is said:

"Cohabitation as husband and wife is a manifestation of the parties having consented to contract such relations inter se.   It is holding forth to the world by the manner of daily life, by conduct, demeanor, and habits, that the man and woman have agreed to take each other in marriage and to stand in the mutual relation of husband and wife."

There was ample evidence to warrant the jury in finding that a valid common law marriage existed between the defendant and the prosecuting witness.

The defendant also contends that there was no proof of desertion and non-support.   There was, however, uncontradicted testimony which tended to prove the charge, and under instructions in which no error has been pointed out or complained of, the jury found it sufficient.

The defendant in his brief contends that "the trial was a nullity because the charge against the plaintiff in error is a felony, and he was not arraigned and was not required to plead."

The record recites that on May 31, 1916, the defendant "is arraigned and pleads not guilty to the charges contained in the information filed against him herein." In 4 C. J. 512 it is said: "The record filed for the purpose of appeal imports absolute verity.   It is the sole, conclusive, and unimpeachable evidence of the proceedings in the lower court." No application for a correction of the record was made in the trial court.   On June 26, 1916, the defendant filed a motion for a new trial, one of the grounds for which was, "that the defendant has never plead to the information." This motion was supported by affidavit of the de-

fendant wherein he denied that he was arraigned and pleaded. An error in the record cannot be attacked collaterally. As was said in *Willson v. Broder,* 24 Calif. 190, "if the entry was erroneous, the error should have been brought seasonable to the notice of the court, on a direct motion to correct it." For the reasons above stated, the record which recites that the defendant was arraigned and pleaded will be taken as conclusive and to import absolute verity.

The plaintiff in error challenges the jurisdiction of the juvenile court in cases of this kind. A similar contention was overruled in *Martin v. People,* No. 9015, 168 Pac. 1171. The juvenile court is a court of record. Sec. 1591, R. S. 1908; sec. 1720 Mills Ann. Sts. 1912; *State Home v. Mulertz,* 60 Colo. 468, 154 Pac. 742. Section 4 of the statute under which the defendant in this case was prosecuted provides that "all courts of record shall have jurisdiction under this act." Session Laws 1911, p. 529; sec. 3454 Mills Ann. Sts. 1912.

The judgment is affirmed.

*Affirmed.*

Decision *en banc.*