## No. 19,962.

Martha French, Ward, *v.* Mary E. Terriere, Administratrix of the Estate of Will Feagins, Deceased, et al.

(386 P. [2d] 352)

Decided October 21, 1963.     Rehearing denied November 18, 1963.

Messrs. Miller and Ruyle, for plaintiff in error.

Messrs. PAYNTER and PAYNTER, for E. E. Feagins, et al.

Messrs. WELLS and SNYDAL, for Marvin Ford, et al.

*In Department.*

Opinion by MR. JUSTICE DAY.

THE parties will be referred to by name.

Martha French, in the Morgan County court, claimed rights as a widow in a determination of heirship proceedings involving the estate of Will Feagins.

Challenged in this writ of error is the validity of the judgment and decree of the district court declaring that Martha French was not the surviving spouse of Will Feagins and therefore not entitled to inherit under the laws of descent and distribution from the estate of Will Feagins. The court found the lawful heirs of Will Feagins to be his brothers and sisters and the living descendants of his deceased brothers and sisters, all of whom are represented by Mary Terriere, Administratrix.

Martha claims error grouped under two headings:

1. She asserts that she should in law be declared the widow of Will Feagins because they had been validly and legally married in a ceremonial marriage in Kearney, Nebraska, on the 12th day of May, 1925, and that a 1931 county court decree of divorce was a nullity because of dismissal of the action by the court on her motion filed three and one-half years later.

2. She contends that if the divorce decree is valid then the parties subsequent thereto again became husband and wife by entering into a common law remarriage and that the court in finding to the contrary erred in failing to apply the proper rule of law.

On the matter of the decree of divorce, Martha sought relief from the effect thereof on two grounds: (a) that the county court records show her divorce action had been dismissed; (b) that if the order of dismissal be

ruled invalid the court in which the divorce action was commenced or the district court as a court of general jurisdiction could vacate the decree of divorce and should have done so.

■ There is no merit in the points of error asserted by Martha. The trial court was bound by the final decree of divorce, was correct in decreeing that the order of dismissal was void and acted properly in refusing to set the divorce decree aside at the time of the hearing in the determination of heirship. On the question of subsequent remarriage under the common law, the issue was resolved by the court on conflicting testimony which was heavily weighted against Martha, and we will not disturb the trial court's findings on review.

■ The divorce proceedings were commenced by Martha against Will Feagins on September 28, 1931. The complaint alleged extreme and repeated acts of cruelty and that the parties had been separated for several months prior to the commencement of the action. Will did not contest the action, and on October 13, 1931, an interlocutory decree was entered. No alimony was granted. Incorporated in the decree and made a part thereof was a property agreement wherein their real and personal property was divided between them. Also in the property settlement was an agreement never to assert a claim against each other's property. The decree further set forth and confirmed the exchange of deeds between the parties indicating that even before the approval of the final settlement by the court the parties had actually carried out their settlement contract. Other deeds of record introduced at the trial clearly indicate that the parties acted under the decree and settlement. The interlocutory decree of October 13, 1931, by force of law (c. 91, Session Laws of Colorado [1929], p. 328) became final six months from the date of its entry.

Under date of March 11, 1935, the order book of the county court contains an entry that the action was "dismissed" on the motion of Martha's attorney. It is undis-

puted that no motion was made to set aside the decree within the six months of the interlocutory period. There is no indication in the record that the motion was ever served on Will Feagins or that a hearing was held thereon. From the record alone the county court had no jurisdiction to dismiss a case which had proceeded to final judgment.

Martha argues that *Jordan v. Jordan,* 105 Colo. 171, 96 P. (2d) 13, is authority for her position and for the power of the county court to dismiss the action. We do not so read the Jordan case. In that case the petition alleged, among other things, "that the rights of third parties were not in any manner involved." The petition was served upon the opposite party, who contested the same, and a full hearing disclosed facts which indicated to the court, and it so held, that reconciliation had occurred during the period of the interlocutory decree, and that the decree therefore had been rendered void. The decree was set aside. In the instant case there is no finding by the court of reconciliation during the interlocutory period, and the word "dismissed" in an order book in the clerk's office has no effect on a final judgment or final decree, and is not the same as finding a decree void ab initio.

Martha contends that evidence presented in the county court and in the district court in the heirship proceedings showed the parties were reconciled and lived together during the period of the interlocutory decree and if the court could nullify the decree in the Jordan case three years after its entry, the court could do so at any time, no matter how many years after its entry. However, in the Jordan case the action was between the original parties and did not constitute, as here, a collateral attack upon the judgment. We recognize the rule of law that void judgments are subject to collateral attack. A void judgment is defined as a simulated judgment devoid of any potency because of jurisdictional defects only. *Davidson Chevrolet v. Denver,* 138 Colo.

171, 330 P. (2d) 1116. Where a court has jurisdiction of the parties and the subject matter, its judgment is not void and its validity cannot be questioned by collateral attack. *Cherry Hill v. Benevolent League of Colorado Travelers Association,* 133 Colo. 349, 295 P. (2d) 231. There is no contention here of lack of jurisdiction of the county court at the time of the entry of the decree of divorce. Assuming for the sake of argument that fraud was perpetrated on the county court in that the parties were reconciled before the final decree, which fact had not been disclosed to the court, the general rule is that such a judgment cannot be impeached in collateral proceedings even on the theory of fraud except where the fraud is extrinsic or affects the jurisdiction of the court rendering the judgment. See, *Hoverstad v. First National Bank & Trust Co.,* 76 S. D. 119, 74 N.W. (2d) 48, 56 A.L.R. (2d) 938, 30A Am. Jur. Judgments § 878, p. 789; 49 C.J.S. Judgments § 434, p. 859.

We perceive no error in the action of the district court in refusing to recognize the county court's dismissal of the divorce action and refusing to enter its own decree rendering the previous divorce decree null and void.

■ On the issue of whether a valid common law remarriage occurred here, the record comprises five days of testimony and sixty-six exhibits. Among the latter was a transcript of testimony given by Martha in a trial in which Will was the defendant. Her testimony was that they were not remarried and were not husband and wife. Her use of the name Martha French in all transactions and on records pertaining to her pension checks was also evidence to support the court's findings. Evidence of cohabitation and some evidence that some of their acquaintances considered them husband and wife was introduced. The trial court wrestled with the voluminous conflicts in the record and in its findings commented that when the evidence was being presented during the trial it "thought it was in a state of utter confusion and irreconcilable" but that after it

"had the opportunity to review and consider the evidence" it felt "that the evidence taken as a whole was reconcilable." The court then concluded:

"There are acts, particularly on the part of Martha, and which I think were concurred in by members of the family who knew the situation, that are not consistent with marriage. While they had an arrangement by which they lived in the same house and I am inclined to agree with Mr. Ruyle that the sexual aspects of this or consummation of the marriage or whatever it may be, I think under the circumstances, that existed here is more or less of a hypothetical situation. I don't think they were concerned about that particularly. As old people do sometimes, there may have been some comment about it, but that was not the object of their living together. He was an old man who was deaf and going blind. He had no family that would help him and she did help him. I think it takes something more than that to be a marriage. I don't think she considered herself bound in marriage to him. As I say, there is in evidence times when it was for some reason or another either convenient or what she felt to her convenience either by acquiesce [sic] or directly to give the appearance of the marriage relationship, but in practically all other transactions when she felt that it was to her advantage to be Martha French she was Martha French. I don't think that that is the relationship that the law has in mind when it says that these people are married. I will therefore find that there was not a marriage relationship between these people * * * ."

It is contended that the trial court made its findings before this court's decision *In Re Peterson's Estate,* 148 Colo. 52, 365 P. (2d) 254, and erroneously applied the law to the question of common law remarriage. With this contention we cannot agree. The Peterson case does not and was not intended to strip a trial court of its fact-finding function. At most it merely set a standard with which a trial court shall weigh the evidence in

cases involving common law remarriage and holds that the evidence in such cases may be less than the positive and convincing proof necessary to establish a common law marriage.

The judgment is affirmed.

MR. JUSTICE McWILLIAMS and MR. JUSTICE PRINGLE concur.