**In re John G. FRAWLEY a/k/a Jack Frawley and Judy A. Frawley a/k/a Judy Williams, Debtors.**

**TRUSTEES OF THE COLORADO CONTRACTORS TRUST, Plaintiffs/Appellees,**

**v.**

**John G. FRAWLEY a/k/a Jack Frawley and Judy A. Frawley a/k/a Judy Williams, Defendants/Appellants.**

Bankruptcy No. 88 B 00103 A.
Civ. A. No. 88–K–1179.
Adv. No. 88 E 272.

United States District Court,
D. Colorado.

March 16, 1990.

David Sesserman, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for Trustees of Colorado Contractors.

David R. Juarez, Denver, Colo., for Frawley.

MEMORANDUM OPINION
AND ORDER

KANE, Senior District Judge.

The debtors, John and Judy Frawley, appeal a judgment of the bankruptcy court

1. Charles de Gaulle, Infantry School Quarterly (April 1953).

denying the dischargeability of a debt to the Colorado Contractors Trust, a company which provided insurance benefits to Mr. Frawley through his insurer. The Frawleys contend that the bankruptcy court erred in excepting from discharge a $17,353.52 debt to the Trust relating to its coverage of health claims for Judy Frawley because, even though the Frawleys obtained a civil divorce, they continued to have a common-law marriage. Therefore, they argue that the Trust's coverage of Ms. Frawley was justified. I affirm.

## I. *Facts.*

Many of the facts of this case are stipulated. The Frawleys were married in 1979. After approximately five years of marriage, the Frawleys obtained a civil divorce on March 22, 1984. Ms. Frawley obtained court permission to resume using her maiden name, although she did not immediately begin doing so. The Frawleys cohabitated for approximately six months after the divorce, and again for another approximate six months during the summer of 1985 to January 1986. They filed separate state and federal tax returns for tax years 1984 and 1985.

Following the divorce, Mr. Frawley continued to submit claim forms to the Trust for the payment of medical claims for Ms. Frawley. The Trust approved payments in excess of $17,353.52 on behalf of Ms. Frawley. The Frawleys did not inform the Trust of their divorce, believing that Ms. Frawley's coverage continued as Mr. Frawley's common-law wife. The Trust contacted the Frawleys when it learned through independent medical records that they had divorced, and the Frawleys acknowledged this fact.

The Trust then made demand for reimbursement of Ms. Frawley's medical expenses, and Mr. Frawley refused this request. On July 8, 1987, the Trust instituted a state court action to recover these funds, which was stayed by the Frawley's Chapter 7 bankruptcy filing on January 5, 1988. On March 31, 1988, the Trust commenced the instant action, seeking a determination that the Frawley's debt to it was nondischargeable under 11 U.S.C.

§ 523(a)(2)(A). After a hearing on the matter, the court ruled that the debt was not dischargeable because the Frawleys had not established a new marital relationship. The Frawleys now appeal.

## II. *Existence of a Marital Relationship.*

The scope of a district court's review of a bankruptcy court judgment is defined in Bankruptcy Rule 8013. Under this rule, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Bankr.R. 8013. Consequently, the district court's factual finding that the Frawleys did not have a common law marriage can only be set aside if clearly erroneous.

There is no question in this case that the debtors continued to have a relationship after their 1985 divorce. They continued to live together for several extended periods of time. Ms. Frawley continued to use her married name and to wear her wedding ring. There is some testimony that they continued to act jointly with respect to their finances, although the Frawleys did not produce documentary evidence to substantiate this. It is clear that their emotional connection survived the divorce. Despite this evidence, the bankruptcy court concluded that although the parties had a continued relationship after their divorce, it did not amount to a common law marriage.

 Colorado law recognizes the institution of common law marriage. "A common law marriage is established by the mutual consent or agreement of the parties to be husband and wife, followed by a mutual and open assumption of a marital relationship." *People v. Lucero,* 747 P.2d 660, 663 (Colo.1987). Thus, Colorado law establishes two essential requirements for a common-law marriage: an agreement between the parties and cohabitation. *Id.* at 663–64. Since an express agreement is unlikely to exist, courts have looked to the parties conduct to establish the existence of such an agreement. "Specific behavior that may be considered includes mainte-

**34**

nance of joint banking and credit accounts; purchase and joint ownership of property; the use of the man's surname by the woman ... and by children born to the parties; and the filing of joint tax returns." *Id.* at 665 (citing Mills, *Common Law Marriage in Colorado*, 16 Colo. Law. 252, 257 (1987)). Common law marriages have also been recognized in Colorado when a previously married couple cohabitates and again holds themselves out as husband wife. In these circumstances, the policy of disfavoring divorce and encouraging resumption of the marital relationship dictates that lesser proof be required to establish common law remarriage than common law marriage. *See Peterson v. Lewis (In re Estate of Peterson)*, 148 Colo. 52, 365 P.2d 254 (1961).

■ Even given the relaxed standard for common law remarriage, the bankruptcy court's ruling that no remarriage existed was not clearly erroneous. There was evidence that both parties considered the obligations of their common-law marriage to be more relaxed or flexible than a civil marriage and that a formal divorce was not necessary if the relationship did not work out. The Frawley's cohabitation after the divorce was sporadic, and Ms. Frawley eventually moved to Durango and resumed the use of her maiden name. There is limited evidence of shared finances. Separate tax returns were filed. In sum, the bankruptcy court's finding that there was a relationship between the parties but that the relationship did not amount to a common-law remarriage is an appropriate assessment of the situation based on the evidence before it and considering the court's evaluation of the credibility of the witnesses. Its finding was not clearly erroneous. I affirm the denial of discharge of the Frawley's debt to the Trust.