SOUTHEASTERN COLORADO WATER
CONSERVANCY DISTRICT,
Complainant–Appellee,

v.

CACHE CREEK MINING TRUST
and Twin Lakes Associates,
Inc., Respondents,

and

Dennis O'Neill, Respondent–Appellant.

No. 92SA251.

Supreme Court of Colorado,
En Banc.

May 24, 1993.

Rehearing Denied June 21, 1993.

William R. Kelso, Denver, for respondent-appellant.

Carlson, Hammond & Paddock, Mary Mead Hammond, Lee H. Johnson, Denver, for Twin Lakes Reservoir and Canal Co. and Special Counsel to Bd. of Water Works of Pueblo, Colo.

Petersen & Fonda, William F. Mattoon, Pueblo, for Bd. of Water Works of Pueblo, Colo.

Fairfield and Woods, P.C., Howard Holme, Stephen H. Leonhardt, Denver, for complainant-appellee Southeastern Colo. Water Conservancy Dist.

Justice MULLARKEY delivered the Opinion of the Court.

This appeal marks the third time that these parties have been before this court on matters relating to six water rights decreed in 1912 to three ditches, the Cache Creek, Arlington, and Clear Creek Ditches. In *Southeastern Colorado Water Conservancy District v. Twin Lakes Associates, Inc.*, 770 P.2d 1231 (Colo.1989) (*O'Neill I*), this court affirmed a judgment of the water court canceling the water rights on the grounds that the water rights had been abandoned shortly after they were decreed. Subsequently, Dennis O'Neill (O'Neill), filed a motion pursuant to C.R.C.P. 60(b)(5), alleging newly discovered evidence, which was denied by the water court, and affirmed by this court in *Southeastern Colorado Water Conservancy District v. O'Neill*, 817 P.2d 500 (Colo.1991) (*O'Neill II*). Now, in another attempt to revive the six abandoned water rights, O'Neill appeals the water court's denial of his motion pursuant to C.R.C.P. 60(b)(2) to set aside the judgment of the water court because the Southeastern Colorado Water Conservancy District and the other objectors to O'Neill's application for a change of water rights (collectively referred to herein as Southeastern) allegedly committed fraud upon him and the court. We affirm the water court's judgment, and because we find this appeal to be frivolous, we remand the case to the water court to assess attorney fees

against O'Neill for Southeastern's costs in defending this appeal.

## I.

On March 18, 1912, six water rights were decreed to Twin Lakes Placers, Limited (Twin Lakes), a British corporation licensed to do business in Colorado. Beginning during the Civil War, and continuing until June 1912, Twin Lakes used water rights totalling 140 cubic feet per second from the three ditches for large-scale hydraulic gold mining in placer mines in Lake and Chaffee Counties. This mining operation discharged mine tailings and debris into the Arkansas River, polluting the river with fine particulate matter and rendering the water unfit for human consumption. This pollution resulted in a court action brought by the cities of Pueblo and Canon City to enjoin Twin Lakes from discharging mine tailings or debris into the Arkansas River. An injunction to that effect was ordered on June 24, 1912. After that time, Twin Lakes went out of business, and the ditches either became unusable due to disrepair, or were used only sporadically and without clear claim of right.

In the ruling leading to *O'Neill I*, the trial court, on May 11, 1987, ruled that there had been nonuse of the water rights from June 24, 1912, and that the rights had been abandoned (the 1987 judgment) and therefore O'Neill, the present owner of the land which had been served by the ditch rights, did not possess any such rights. We affirmed this conclusion in *O'Neill I*, 770 P.2d 1231.

On March 30, 1990, about one year after our decision in *O'Neill I*, O'Neill filed a C.R.C.P. 60(b)(5) motion, seeking relief from the judgment because of newly discovered evidence (the 1990 C.R.C.P. 60(b)(5) motion). After considering his submissions, the water court, on June 25, 1990, denied O'Neill's motion, holding that the evidence could have been discovered prior to trial by using reasonable diligence, or, alternatively, that the evidence would not have changed the result of the trial. This court agreed, and affirmed the water court's denial of the 1990 C.R.C.P. 60(b)(5) motion. *O'Neill II*, 817 P.2d 500. We declined to impose sanctions on O'Neill, because we could not conclude that O'Neill's argument was "totally devoid of 'rational argument based on the evidence or law.' *Mission Denver Co. v. Pierson*, 674 P.2d 363, 366 (Colo.1984)." *O'Neill II*, 817 P.2d at 507 n. 9.

O'Neill filed a C.R.C.P. 60(b)(2) motion on March 16, 1992, four months and twenty days after the mandate in *O'Neill II* issued, almost three years to the day after this court's decision in *O'Neill I*, and slightly more than four years and ten months after the water court entered its judgment and decree of abandonment (the 1992 C.R.C.P. 60(b)(2) motion). In this motion, O'Neill challenged four photographic exhibits, which were used during the testimony of Pueblo Board of Water Works' and Twin Lakes Reservoir and Canal Company's witness Robert Harrison in the first phase of the trial in October 1986, but not entered into evidence until the trial resumed in March 1987.[1] O'Neill claimed that the photographs were falsely and fraudulently identified as being of the Cache Creek Ditch when, O'Neill alleges, the photographs were actually of the Arlington Ditch. The water court ruled that the motion was untimely, and denied the motion. This appeal followed.

## II.

The initial issue before us is the timeliness of the 1992 C.R.C.P. 60(b)(2)[2] motion.

---

**1.** The photographs were used by Harrison to refresh his recollection of what the ditch looked like in 1965, when he had surveyed portions of the Arlington and Cache Creek ditches. The water court did not allow the photographs to be entered into evidence at that time because Southeastern had not endorsed the photographs in its trial certificate. O'Neill's counsel gave Southeastern permission to endorse the four photographs during the five-month recess, and they were entered into evidence when the trial resumed.

**2.** C.R.C.P. 60(b) provides, in relevant part:
   On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ...

O'Neill, both in this court, and below, argues a number of reasons why the motion was timely. O'Neill argues that the six-month time limit for C.R.C.P. 60(b)(2) motions is tolled pending appeal. O'Neill also argues that his 1992 C.R.C.P. 60(b)(2) motion is not subject to the six-month time limit because it is an "independent action" or that there was a "fraud upon the court," both of which are exceptions to the Rule's time limitation. None of these reasons has merit.

### A.

First, O'Neill argues that the 1992 C.R.C.P. 60(b)(2) motion was timely because the six-month time to file such a motion was tolled pending his appeal of the water court's denial of the 1990 C.R.C.P. 60(b)(5) motion. O'Neill contends that tolling applies because the water court lacked jurisdiction over a C.R.C.P. 60(b)(2) motion while his second appeal was pending. He also argues in this court for the first time that his 1992 C.R.C.P. 60(b)(2) motion is attacking the validity of the water court's order with regard to the 1990 C.R.C.P. 60(b)(5) motion, and not the 1987 judgment, except incidentally.

While the appeal in *O'Neill II* (regarding O'Neill's 1990 C.R.C.P. 60(b)(5) motion to set aside the verdict because of newly discovered evidence) was pending, O'Neill moved to supplement his appellate brief in this court, alleging that, on December 13, 1990, while examining the record, he discovered that the four photographs did not represent sites on the Cache Creek Ditch. O'Neill did not mention "fraud" in that motion, nor did he suggest that such alleged fraud undermined the validity of the water court's ruling on the 1990 C.R.C.P. 60(b)(5) motion. O'Neill's motion to supplement his brief was denied.

The motion that is the source of this appeal alleges the same facts as O'Neill's motion to supplement his opening brief in *O'Neill II*. O'Neill advances only a differ-. ent legal theory, *i.e.*, fraud instead of newly discovered evidence. O'Neill does not assert in this court that his 1992 C.R.C.P. 60(b)(2) motion is timely with respect to the water court's 1987 judgment of abandonment. Indeed, O'Neill's motion could be timely only if it were truly directed at the water court's June 25, 1990 denial of his 1990 C.R.C.P. 60(b)(5) motion and if the time to file such a motion is tolled pending an appeal. Neither.pillar of O'Neill's argument can bear the weight of much scrutiny.

Contrary to O'Neill's assertion, his 1992 C.R.C.P. 60(b)(2) motion is clearly directed toward the original 1987 judgment. O'Neill's convoluted theory is that his 1992 C.R.C.P. 60(b)(2) motion was directed to the judge's order denying his 1990 C.R.C.P. 60(b)(5) motion because the water court's conclusion that the "newly discovered evidence" would not have changed the trial's outcome was "tainted" by the "fraudulently" identified photographs. O'Neill's original motion filed in the water court, however, belies his argument that the motion was directed against the water court's order denying his 1990 C.R.C.P. 60(b)(5) motion. O'Neill's complaint in the 1992 C.R.C.P. 60(b)(2) motion has to do with the photographs which purported to be of the Cache Creek Ditch, but the relief he·requested was from the 1987 judgment, not from the denial of his previous 1990 C.R.C.P. 60(b)(5) · motion.

■ Furthermore, O'Neill fails to realize that the standard he must meet to prevail in this motion, if it is truly directed toward the water court's ruling on the 1990 C.R.C.P. 60(b)(5) motion, is that the alleged fraud somehow tainted the discretion of the court in denying the 60(b)(5) motion. That

---

(2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than six months after the judgment, order, or proceeding was entered or taken. A motion under this section (b) does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a court: (1) To entertain an independent action to relieve a party from a judgment, order, or proceeding, or (2) to set aside a judgment for fraud upon the court....

is, O'Neill's burden here is not a preponderance of the evidence, as it was at the original trial, or even that the "newly discovered evidence" could not have been discovered earlier, was material, and probably would have changed the result. His burden, if we are to take him at his word, is to show that Harrison's allegedly perjured testimony was willfully and purposely given, that it was material and probably controlled the result of the ruling on O'Neill's 1990 C.R.C.P. 60(b)(5) motion (that is, that the "fraud" probably would have changed the water court's conclusion that the "newly discovered evidence" would not have probably changed the result at trial, a decision resting in the discretion of the water court), and that O'Neill could not have discovered the falsity of the testimony by reasonable diligence in time to offset it while the 1990 C.R.C.P. 60(b)(5) motion was pending. *See Shammas v. Shammas*, 9 N.J. 321, 88 A.2d 204, 208–09 (1952) (Brennan, J.). This reed on which O'Neill's hopes rest is almost invisibly thin, and breaks under the least pressure.

First, assuming for the sake of argument that Harrison's testimony was willfully and purposely perjured, whether the photographs were of the Cache Creek Ditch or some other ditch would have been, at best, cumulative as to the water court's ruling on the 1990 C.R.C.P. 60(b)(5) motion. Second, in view of the fact that O'Neill was intimately familiar with the terrain of the Twin Lakes area,[3] he cannot show that he was diligent in bringing the alleged misidentification of the photographs to the water court's attention. Furthermore, O'Neill's 1992 C.R.C.P. 60(b)(2) motion is too late because the time to file such a

motion is not tolled pending an appeal. We next discuss each of these issues.

1.

O'Neill alleges that the photographs were fraudulently identified. The elements of fraud are: (1) a false representation of a material existing fact; (2) knowledge on the part of the one making the representation that it was false; (3) ignorance on the part of the one to whom the representation was made of its falsity; (4) the representation was made with an intention that it be acted on; and (5) the representation resulted in damage. *Concord Realty Co. v. Continental Funding Corp.*, 776 P.2d 1114, 1117–18 (Colo.1989). Assuming, for the sake of argument that either Southeastern or Harrison knew that the photographs were not of the Cache Creek Ditch and that the photographs caused damage,[4] the photographs were cumulative, not material or controlling,[5] especially with regard to the trial court's order in O'Neill's 1990 C.R.C.P. 60(b)(5) motion, and O'Neill cannot be deemed ignorant of the alleged falsity of the photographs.

In the original abandonment trial, after Southeastern had made out a prima facie case of abandonment, O'Neill had the burden of explaining sixty years of nonuse of the ditches.[6] At that time, the photographs were not yet in evidence. Harrison's evidence only related to the time immediately prior to the time when O'Neill gained title to the ditches. On the other hand, O'Neill's "new evidence" raised in his 1990 C.R.C.P. 60(b)(5) motion, which both the trial court and this court held would not have changed the outcome of the trial, consisted mostly of evidence of mining activity, and presumably of sporadic usage of

---

3. At the original trial, O'Neill stated on direct examination, that having a ranch there, and having mined and having surveyed the properties of his grandfather's estate, he had "probably covered just about every inch of those properties."

4. Harrison swore out an affidavit stating that he testified as to the truth as he knew it, which would go to refute the second element of O'Neill's claim of fraud. As for the other element of the fraud claim, it is clear that, whether

false or not, Harrison's testimony was intended to support Southeastern's abandonment claim.

5. We assume here, without deciding, that materiality with regard to fraud is the same as materiality with regard to relief from judgment pursuant to C.R.C.P. 60(b)(2).

6. Southeastern stipulated at trial that, if O'Neill could prove that the ditch rights had not been abandoned through 1970, it would not assert abandonment after 1970.

water under the contested water rights, dating back to the First World War. Even though the water court referred to the photographs in its 1987 judgment order after the trial, the photographs were cumulative to Harrison's testimony, which O'Neill does not attack here. The trial court heard evidence from two residents of the area who were born in the first decade of this century, who testified that after the 1912 pollution injunction, Twin Lakes and its successors allowed the mining equipment and structures of the ditches to deteriorate, and that trespassers were allowed to remove pieces of the flumes and pipes for their own use.

The source of water for the Cache Creek Ditch was from "Willet's Gulch and Boswell Gulch," sources tributary to Lake Creek, for the first 25 c.f.s. (the north branch), and "Lost Canon" (or "Lost Canyon") for the remaining 15 c.f.s. (the Lost Canyon branch). The north branch conveyed water from Willet's (also known as Willis) Gulch and Boswell Gulch eastward south of Twin Lakes and then into the Cache Creek basin. The ditch included a large wooden flume where it crossed Flume Gulch. Water from Lost Canyon drained into Cache Creek, which could be diverted through the Lost Canyon branch to its junction with the north branch and the Arlington Ditch, whence the water was delivered for use in the Cache Creek basin.

The north branch has not been used to divert water from its decreed sources to its decreed place of use from June 24, 1912 until the present, and the ditch has not been maintained for that same period, notwithstanding some maintenance performed by O'Neill since 1972. A field inspection of the ditch on May 30, 1972, described in a memorandum written by Edward F. Bailey of the United States Forest Service, revealed that there was no headgate or diversion structure in evidence in Willis Gulch, and that the ditch had been completely washed out or filled in by slides, both at Willis and Boswell Gulches. In addition to having his recollection refreshed by use of the disputed photographs, Harrison testified that, as part of a 1965 survey, he walked along a great deal of the Cache Creek Ditch, from its diversion point at Willis Gulch to the place that it crosses Flume Gulch. He also testified regarding two possible places where the ditch could have crossed Flume Gulch (about which he was cross-examined), but despite the parallel crossings, his opinion was that Cache Creek Ditch could not convey water. Furthermore, the trial court found that there was no satisfactory evidence of diversions from Lost Canyon or Cache Creek from the injunction date until at least 1984 by any owner or authorized user of the water rights. The water court also personally viewed the ditches in question, at the request of O'Neill's counsel. Notwithstanding O'Neill's current allegations regarding the photographs, the water court remarked that its view of the ditches showed that the condition of the ditches was consistent with the conditions depicted in the photographs, and that, although a new ditch had been constructed along the line of the north branch, it was so new that bulldozer tracks and blade scrapes were visible along the ditch. The water court therefore was not relying only on the photographs taken in 1965, but on other evidence as well as its own impressions of the present-day condition of the ditches.

Therefore, even assuming that the photographs were misidentified, there was a plethora of other evidence indicating that the water rights in the Cache Creek Ditch had been abandoned many years previously and that the ditch had not been capable of diverting water from its decreed source and delivering water to its decreed places of beneficial use for many years. Far from being fraudulent, material, or controlling of the result, the photographs were clearly cumulative, both at trial, and as supporting the water court's denial of O'Neill's 1990 C.R.C.P. 60(b)(5) motion.

■ Even assuming Southeastern knew that the photographs were of the Arlington Ditch, and not the Cache Creek Ditch, O'Neill was not diligent in bringing this to a court's attention. O'Neill does not explain why he, as owner of both ditches, did not recognize that the photographs were supposedly of the wrong ditch until over

four years after the latest possible date that he apparently had access to them (when they were offered and refused in the first phase of the trial), and forty-five months after they were entered into evidence at trial in March 1987. In fact, in his brief to the trial court on his 1992 C.R.C.P. 60(b)(2) motion, he stated:

A person with reasonable awareness can walk the length of the decreed Cache Creek Ditch and cannot see the photographic scenes depicted by the [photographs]. But a person with reasonable awareness can clearly see the decreed Cache Creek Ditch embankment by standing at the photographer's locations where the photographic Exhibits 1(n) and 1(p) were taken. And said person cannot walk the entire old ditch alignment without running into the decreed Cache Creek Ditch embankment.

O'Neill owns the ditch. The fact that he was not prepared to impeach the testimony of Harrison regarding the condition of the Cache Creek Ditch, either presently or in 1965 when the photographs were taken, is nothing more than simple inadvertence or oversight on the part of O'Neill and his trial counsel, and not, on its face, fraud. This is made clear by his concession in his trial court brief, that a reasonable person could see that the photographs were not of the Cache Creek Ditch, and that the Cache Creek Ditch embankment was visible on two of the photographs. If anyone had access to the information that Harrison's description of the photographs was in error, it was O'Neill.

Although O'Neill is asking this court indirectly to overturn a judgment of the water court entered six years ago (even though, under Rule 60, the judgment is final), he should have brought the photograph issue to the water court's attention long ago. In fact, O'Neill should have brought it to Harrison's attention when he was on the witness stand, and cross-exam-

ined Harrison (or in some other way, impeached his testimony) as to the identity of the ditch (or ditches) in the photographs. It is clear, as we noted in a similar situation in *O'Neill II*, that O'Neill's "new" information here regarding the photographs was information which could have been discovered before or during trial through reasonable efforts. Whether O'Neill had access to the photographs before trial, or only after the October 1986 portion of the trial, he had at least five months to determine whether the photographs depicted what they were alleged to depict. He did not do so, and this court cannot and will not vacate a civil judgment because counsel or a party did not undertake to develop and introduce at trial evidence which was securely within that person's control.

2.

■ Although we can dispose of this case on the facts of the case, we also hold that O'Neill has no support in the law. The time to file a C.R.C.P. 60(b) motion is not tolled pending an appeal. Generally, filing an appeal divests the trial court of jurisdiction. *Schnier v. District Court*, 696 P.2d 264, 267 (Colo.1985). Under Rule 60, a party seeking relief from a judgment on the grounds that the judgment was obtained by fraud or misrepresentation must make such a motion within a reasonable time and, regardless of whether the time was reasonable, not more than six months after the judgment was entered. We conclude that O'Neill's motion and subsequent appeal are woefully out of time because, while the trial court did not have jurisdiction to entertain a Rule 60(b) motion while an appeal was pending, an appeal does not toll the six-month time limit.[7]

■ Here, O'Neill's main argument for the timeliness of his motion is founded upon the notion that a trial court does not have jurisdiction to consider a C.R.C.P. 60(b) motion while the case is on appeal.

---

7. We note that the water court denied the 1992 C.R.C.P. 60(b)(2) motion as untimely without comment, not specifying whether the motion was untimely because it was unreasonably late, or not within six months of the judgment, order, or proceeding. While our analysis centers on whether the motion was made within the six-month period, we also conclude that, notwithstanding the six-month period limitation, the 1992 C.R.C.P. 60(b)(2) motion was not made within a reasonable time.

While this is true, as we held in *Molitor v. Anderson*, 795 P.2d 266 (Colo.1990), it is also irrelevant. In *Molitor*, we noted that, while the trial court did not have jurisdiction to entertain a C.R.C.P. 60(b) motion while an appeal was pending, the moving party could seek to have the case remanded to the trial court to determine whether the judgment should be vacated.

■ In *Molitor*, we did not discuss whether the time to file a C.R.C.P. 60(b) motion continued to run or tolled while an appeal is pending. We hold today that the six-month time period is not tolled pending appeal, until and unless the moving party makes a motion to the appellate court to remand the case to the trial court to entertain a C.R.C.P. 60(b) motion within six months of the date that judgment entered.

Furthermore, O'Neill's 1992 C.R.C.P. 60(b)(2) motion which gives rise to this appeal was in fact directed at the merits of the 1987 judgment of abandonment, although O'Neill claims that it was directed at the denial of his 1990 C.R.C.P. 60(b)(5) motion. Because tolling pending appeal is the only argument that O'Neill has to show that the motion was timely (including an argument invoking the concept of "equitable tolling"[8]), and there is no support in the facts or at law for such tolling, we conclude that this argument is not only meritless, but frivolous. The water court entered its judgment, decreeing that the water rights at issue were abandoned in 1912 on May 11, 1987. O'Neill, under C.R.C.P. 60(b) had six months to move for relief from that judgment on the grounds that the original judgment was obtained by fraud or misrepresentation. He could apply either to the trial court if there was no appeal, or to the appellate court, if an appeal was pending, for remand. That time period expired on November 11, 1987.[9] As for O'Neill's argument that the present motion under appeal was attacking the water court's denial of O'Neill's 1990 C.R.C.P. 60(b)(5) motion, that motion lacked any substantial factual basis.

## B.

■ O'Neill argues, alternatively, that the water court's judgment should be set aside because it was obtained through fraud pursuant to the "savings clause" of Rule 60(b).[10] We disagree.

■ Rule 60(b) provides that the rule does not limit a court's power to entertain an "independent action" to relieve a party from a judgment, order, or proceeding. An independent action in equity to set aside a judgment has strict limitations.

> The indispensable elements of such a cause of action are (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*National Surety Co. v. State Bank of Humboldt*, 120 F. 593, 599 (8th Cir.1903). Furthermore,

---

**8.** O'Neill argues that "equitable tolling" is applicable here because of the motion that he filed in this court in *O'Neill II* to supplement his appellate brief in December 1990. Assuming that the concept of equitable tolling, a statute of limitations concept, is applicable to time limitations under the Rules of Civil Procedure, O'Neill's motion to this court, even if construed as an inartful, pro se Rule 60(b) motion or motion to remand, was not timely. The judgment about which O'Neill is complaining in this court in this appeal is the original trial court judgment of abandonment, which was entered on May 11, 1987. O'Neill's December 1990 motion was more than three years too late.

**9.** Even if the time to file a motion pursuant to C.R.C.P. 60(b) were tolled pending an appeal, this time expired on September 13, 1989, six months after our decision in *O'Neill I* was announced.

**10.** The "savings clause" of C.R.C.P. 60(b) provides:

> A motion under this section (b) does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a court: (1) To entertain an independent action to relieve a party from a judgment, order, or proceeding, or (2) to set aside a judgment for fraud upon the court....

[r]esort to an independent action may be had only rarely, and then only under unusual and exceptional circumstances. It is not the function of an independent action to relitigate issues finally determined in another action between the same parties. It is not a remedy for inadvertence or oversight by the losing party in the original action, nor will it lie on behalf of a party who was himself at fault.

11 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2868 at 239 (1973) (footnotes omitted).

O'Neill can show neither all of the elements needed for an independent action cause of action, nor "unusual and exceptional circumstances." First of all, as we noted earlier, O'Neill should have determined during trial that the photographs were not of the Cache Creek Ditch, his property. Second, O'Neill should have discovered the allegedly new information regarding the photographs before or during trial through reasonable efforts. Finally, there is no basis in O'Neill's allegations of fraud, or, for that matter, for anything more than failure of memory on the part of Harrison, at the very most.

### C.

■ O'Neill's final argument is that the judgment was obtained through "fraud upon the court." This argument, too, is wholly without merit. While "fraud on the court" is not clearly defined either in Colorado or in other jurisdictions, it is more than mere fraud. We have held that only a judgment obtained through fraud "extrinsic" to that judgment is susceptible to collateral attack.

Extrinsic fraud, sometimes called collateral fraud, has been defined as that which goes to the jurisdiction of the court, or constitutes a fraud upon the law of the forum, or which operates to deprive the person against whom the judgment was rendered of an opportunity to defend the action when he has a meritorious defense. It is such as pre-

vents the party complaining from making a full and fair defense.

*Fahrenbruch v. People ex rel. Taber*, 169 Colo. 70, 76, 453 P.2d 601, 605 (1969). Intrinsic fraud, on the other hand, is such that the alleged fraud pertains to an issue involved in the original action or where the acts constituting the fraud were or could have been litigated in the original action. *Id.* at 77, 453 P.2d at 605. While this court's retention of the distinction between "intrinsic" and "extrinsic" fraud has been criticized, *see In re Estate of Bonfils*, 34 Colo.App. 268, 273–74, 529 P.2d 340, 343 (1974) (Smith, J., dissenting), *rev'd* 190 Colo. 70, 543 P.2d 701 (1975), we permit the setting aside of a judgment in equity on a showing of extrinsic fraud alone in such circumstances because such fraud corrupts the judicial power and serves to turn a court of law into an instrument of injustice. A fraud upon the court, as contemplated by Rule 60(b) is one which interferes with the judicial machinery itself.[11] *Porcelli v. Joseph Schlitz Brewing Co.*, 78 F.R.D. 499, 500–01 (E.D.Wis.), *aff'd* 588 F.2d 838 (7th Cir.1978). Perjury by a witness is not such a fraud. *Id.* at 501. The "fraud" that O'Neill is alleging here is clearly intrinsic fraud, and in no conceivable way could have prevented him from making a full and fair defense of the claim that the water rights were abandoned, even if he could prove his fraud claim.

Here, O'Neill makes a bare, unsupported allegation that Harrison's testimony was perjured and part of a grand conspiracy to defraud the court. There are no facts supporting such a rash allegation. The facts, instead, support the opposite contention, that the court was not defrauded at all.

O'Neill's allegations are wholly insubstantial. First of all, O'Neill is complaining of what he claims is perjury. Even if the photographs were not of the Cache Creek Ditch, but were of some other ditch, Harrison's testimony regarding the photographs and their introduction into evidence as being photographs of the Cache Creek Ditch is neither extrinsic fraud nor fraud upon

---

**11.** Obvious examples of fraud upon a court are bribery or other corruption of the court or of a jury, or where an attorney is complicitous in perpetrating the fraud.

the court. Second, O'Neill cannot show that the alleged perjury, and not his own indifference, deprived him of whatever defense the photographs allegedly took from him. O'Neill, who became the owner of the ditches only a few years after the photographs were taken, and who remained the owner of the ditches, knew or should have known what the ditches looked like. O'Neill led the trial court on a tour of portions of the ditches. The fact that O'Neill did not contest the accuracy of the photographs, with respect to the condition of the ditch, demonstrates not fraud on the part of the complainant, Southeastern, but simply either oversight on the part of O'Neill and his counsel or an implicit acknowledgment that all three ditches were, in fact, in considerable disrepair when he took possession of them. While the photographs may have been important evidence in the abandonment case, they were clearly not the only evidence, or even the key pieces of evidence. Instead, they were only one (of four) piece(s) of many, the manifest weight of which was overwhelmingly contrary to O'Neill's position.

### D.

O'Neill did not file his motion within a reasonable time, and not less than six months after the judgment was entered, and he has not and cannot show that this claim for relief from judgment comes under one of the exceptions to this time limit. To the extent that O'Neill claims that the motion here under appeal was attacking the validity of the water court's denial of his 1990 C.R.C.P. 60(b)(5) motion, the factual basis of his claim is wholly insubstantial and contrary to the clear intent of his 1992 C.R.C.P. 60(b)(2) motion. Therefore, we conclude that O'Neill's 1992 C.R.C.P. 60(b)(2) motion was inexcusably untimely.

### III.

Southeastern claims that this appeal was frivolous. We agree. As the previous discussion has shown, O'Neill's claims on this motion cannot be supported by either the applicable law or the facts, or even by O'Neill's allegations. The instant appeal, groundless as it clearly is, appears to have been filed and prosecuted only for purposes of delay.

In *Mission Denver Co. v. Pierson*, 674 P.2d at 366, we formulated standards to determine whether an appeal is frivolous. We held "that an appeal should be considered frivolous if the proponent can present no rational argument based on the evidence or the law in support of proponent's claim or defense, or the appeal is prosecuted for the sole purpose of harassment or delay." *Id.* We have already shown that O'Neill had no rational argument based on the evidence.

O'Neill's tolling argument has some superficial merit. The procedural question was not settled law at the time that O'Neill filed his 1992 C.R.C.P. 60(b)(2) motion. Looking beyond the mere superficialities, however, the fact that the question of tolling was still open does not make the motion non-frivolous. If O'Neill's 1992 C.R.C.P. 60(b)(2) motion was directed at the original judgment, it was out of time regardless of tolling. If it was directed at the water court's denial of his 1990 C.R.C.P. 60(b)(5) motion, it was groundless, as well as unreasonably late. To succeed on the merits of his 1992 C.R.C.P. 60(b)(2) motion, O'Neill would have to show that the alleged fraud was serious enough to undermine the water court's decision on the merits of his new evidence claim, a motion which was addressed to the discretion of the water court, and then appeal to the water court's discretion *again*. On this appeal, in addition to bearing the burden of exponential trial court discretion, O'Neill has to show this court that there was an abuse of that exponential discretion. While a situation sufficiently egregious to warrant relief is imaginable, this certainly is not such a case.

Reviewing the record and the briefs in this case, it is difficult to determine why O'Neill filed the instant motion, and why he appealed. The water rights he hopes to revive would be enormously valuable because of the large amount of water and the early appropriation date involved. Perhaps O'Neill believes that any chance, no matter

how slight, is worth pursuing in view of the potentially great reward. O'Neill has lost yet again, and this time it is not without added cost. Appellees are entitled to attorney fees for defending this appeal. *See* § 13–17–102, 6A C.R.S. (1987); C.A.R. 38(d); C.R.C.P. 11.

### IV.

To conclude, we hold that O'Neill's motion for relief from judgment pursuant to C.R.C.P. 60(b)(2), alleging fraud, is both untimely and wholly without merit. The judgment of the water court, denying the motion, is affirmed. Because we find this appeal to be frivolous, we remand the case to the water court to assess attorney fees against O'Neill.