Opinion by JUDGE WEBB
¶ 1 One might think that the meaning of "payment"-a word in everyone's vocabulary-is beyond dispute. But in this action to recover underinsured motorist (UIM) benefits from defendant, State Farm Mutual Automobile Insurance Company, applying the three-year statute of limitations in section 13-80-107.5(1)(b), C.R.S.2014, requires that this word be defined. And the statute does not do so.
¶ 2 Plaintiff, Edna Ella Stoesz, State Farm's insured, did not bring the action within three years of the underlying accident. Still, she entered into a settlement agreement with the underinsured motorist's liability insurer, Progressive Insurance Company, shortly before the limitations period ended. The trial court entered summary judgment against Stoesz on the basis that this settlement agreement did not constitute payment, which would have extended the limitations period for an additional two years. Based on undisputed facts, we reach the same conclusion, and therefore we affirm.
*585 I. Background
¶ 3 The parties agree on the following timeline.
• On November 18, 2008, Stoesz was injured when an underinsured motorist rear-ended her car.
• On November 9, 2011-just days before the three-year limitations period expired-Stoesz sent an e-mail to Progressive confirming a policy-limits settlement.
• On December 13, 2011-shortly after this limitations period had ended-State Farm approved the settlement, at Stoesz's request.
• On December 16, 2011, Progressive issued the settlement check.
• On December 12, 2013-within two years of receiving the settlement payment-Stoesz commenced this action.
II. Standard of Review
¶ 4 Familiar principles inform our review.
• A trial court's order granting or denying summary judgment is subject to de novo review. Westin Operator, LLC v. Groh, 2015 CO 25, ¶ 19, 347 P.3d 606.
• Summary judgment is appropriate only if " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Id . (quoting C.R.C.P. 56(c) ).
• "All doubts must be resolved against the moving party; at the same time, the nonmoving party must receive the benefit of all favorable inferences that may be reasonably drawn from the undisputed facts." Id . at ¶ 20 (internal quotation marks omitted).
III. Stoesz's Claim Was Untimely Under Section 13-80-107.5(1)(b)
¶ 5 Stoesz contends her action was timely because she entered into a settlement agreement with Progressive before the limitations period had run, which gave her an additional two years to bring the action; and, in any event, Progressive agreed to toll the statute of limitations for a claim against its insured while State Farm considered approving the agreement. State Farm responds that subsection (1)(b) requires "payment" during the limitations period, which was not met by the settlement agreement, and the tolling agreement between Progressive and Stoesz did not affect its rights. We agree with State Farm.
A. Law
¶ 6 The meaning of "payment" is a question of statutory interpretation subject to de novo review, looking first at the statute's language to discern legislative intent. Granite State Ins. Co. v. Ken Caryl Ranch Master Ass'n, 183 P.3d 563, 567 (Colo.2008). "[A] statute has meaning according to the legislative intent expressed in the language actually chosen by the legislature." Benefield v. Colo. Republican Party, 2014 CO 57, ¶ 11, 329 P.3d 262. "Should that language admit of more than one reasonable understanding, it is considered to be ambiguous and must be construed." Id .
¶ 7 When examining a statute's wording, "[w]e do not presume that the legislature used language idly and with no intent that meaning should be given to its language." Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist., 109 P.3d 585, 597 (Colo.2005) (internal quotation marks omitted). Rather, "we strive to interpret statutes in a manner that avoids rendering any provision superfluous." Qwest Corp. v. Colo. Div. of Prop. Taxation, 2013 CO 39, ¶ 16, 304 P.3d 217.
¶ 8 Subsection (1)(b) provides, as relevant here:
An action ... of an "underinsured motorist" insurance claim ... shall be commenced ... within three years after the cause of action accrues; except that, if the underlying bodily injury liability claim against the underinsured motorist is preserved by commencing an action against the underinsured motorist or by payment of either the liability claim settlement or judgment within [three years], then an action ... of an underinsured motorist claim shall be timely if such action is commenced ... within two years after the insured *586 received payment of the settlement or judgment on the underlying bodily injury liability claim....
§ 13-80-107.5(1)(b) (emphasis added).
¶ 9 This subsection "not only provides the insured a term of years following the injury within which to file, much like a tort claim, but also provides him with a period of time after he settles or reaches judgment against the tortfeasor and thus becomes aware of an uncompensated loss." Pham v. State Farm Auto. Ins. Co., 2013 CO 17, ¶ 21, 296 P.3d 1038. It does so by "allow [ing] an insured to wait to file until after he has actually received payment of that settlement or judgment." Id . But an insured is only allowed an additional two years if the underlying bodily injury liability claim against the underinsured motorist has been properly preserved. Id . Under subsection (1)(b), preservation can occur in two ways: "by commencing an action against the underinsured motorist"; or "by payment of either the liability claim settlement or judgment." § 13-80-107.5(1)(b) (emphasis added).
B. Analysis
¶ 10 Because Stoesz did not commence an action against the underinsured motorist, preservation depends on whether "payment" of "the liability claim settlement" occurred within the three-year limitations period by virtue of the settlement agreement. We conclude that it did not.
1. Meaning of "Payment"
¶ 11 The parties do not cite Colorado case law, nor have we found any, addressing the meaning of "payment" under subsection (1)(b).[1] Absent any such authority, "the inquiry into the plain meaning of this [term] may begin with dictionary definitions." People v. Fioco, 2014 COA 22, ¶ 19, 342 P.3d 530. "Payment" means "the act of paying or giving compensation: the discharge of a debt or obligation." Webster's Third New International Dictionary 1659 (2002). According to Black's Law Dictionary 1243 (9th ed. 2009), "payment" means "[p]erformance of an obligation," which occurs "by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation"; or "[t]he money or other valuable thing so delivered in satisfaction of an obligation." (Emphasis added.)
2. Ambiguity
¶ 12 Although Stoesz fails to present a different definition from either a dictionary or a case, she posits that because section 13-80-107.5 does not define payment, the statute is ambiguous. From this premise, she urges that our definition should be broad and reflect the policy of fully compensating persons injured by financially irresponsible motorists. See Terranova v. State Farm Mut. Auto. Ins. Co., 800 P.2d 58, 61 (Colo.1990) ("The purpose of the uninsured motorist coverage mandated by section 10-4-609[, C.R.S. 2014,] is to compensate an innocent insured for loss, subject to the insured's policy limits, caused by financially irresponsible motorists.").
¶ 13 But legislative failure to define a term does not necessarily make it ambiguous. See River of Life Kingdom Ministries v. Vill. of Hazel Crest, Ill., 611 F.3d 367, 389 (7th Cir.2010) ("The terms 'assembly' and 'institution' are not defined in the statute, but they are not ambiguous in this context."). This is especially so where, as here, the statutorily undefined term has a commonly understood meaning. See Preferred Sites, LLC v. Troup Cnty., 296 F.3d 1210, 1217 (11th Cir.2002) ("The term 'final action' is not defined by the statute, but its plain meaning is not ambiguous."); cf. Colo. Water Conservation Bd., 109 P.3d at 599 ("Where a statutory word or phrase, not defined by the legislature, has no plain meaning or is reasonably susceptible to multiple meanings, we are faced with an ambiguity....").
¶ 14 Stoesz's parallel argument for a broad, policy-based definition-that "payment" is ambiguous because it is susceptible to more than one meaning-fares no better. According to Stoesz, "payment" could mean the receipt of funds; the date a payment check "was prepared by [the] insurer"; or, as she urges to avoid the time bar, "the date the *587 parties reached a legally enforceable contractual agreement to pay."
¶ 15 As for her first example, one dictionary definition quoted above focuses on the act of delivery, as do some cases. See, e.g., In re Thomas B. Hamilton Co., Inc., 969 F.2d 1013, 1022 (11th Cir.1992) ("The term 'payment' generally means the delivery of money or its equivalent by one from whom it is due to another to whom it is due."); Votzmeyer v. Votzmeyer, 964 S.W.2d 315, 321 (Tex.App.1998) ("A payment is a delivery of money by the person from whom it is due to the person to whom it is owed.") (internal quotation marks omitted).
¶ 16 Be that as it may, the language of subsection (1)(b) precludes equating "payment" with receipt. Subsection (1)(b) uses both "payment" of a settlement and "received payment" of a settlement. The General Assembly is presumed to have intended a difference between them. Because Stoesz's argument that "payment" could mean when the settlement payment was received ignores this presumed difference, it would render the General Assembly's use of the term "received" superfluous. But courts "must ... avoid interpretations that render statutory provisions redundant or superfluous." Wolford v. Pinnacol Assurance, 107 P.3d 947, 951 (Colo.2005).
¶ 17 As to her other examples, Stoesz does not cite any authority supporting either the date a payment check was prepared or the date of an enforceable settlement agreement. Nor have we found any in Colorado.
¶ 18 For these reasons, the term payment, as used in this statute, is not ambiguous. Absent ambiguity, a court need not favor a broad definition and may not consider policy implications. See Krol v. CF & I Steel, 2013 COA 32, ¶ 28 n. 6, 307 P.3d 1116 ("[P]olicy does not justify disregarding the plain language of [a statute].") (citing cases); Bontrager v. La Plata Elec. Ass'n Inc., 68 P.3d 555, 561 (Colo.App.2003) ("We need not address plaintiff's public policy arguments because we view the relevant Colorado statutes as unambiguous."). Therefore, we do not consider further the policy or purpose of compensating "innocent insured for loss ... caused by financially irresponsible motorists."
¶ 19 Even so, because of the statutory distinction between "payment" and "received payment," discussed above, Stoesz's example of payment by entering into a settlement agreement cannot be rejected on the sole basis that it does not encompass receipt. But including settlement agreements within the meaning of "payment," at least for statute of limitations purposes, would contradict two fundamental principles underlying such statutes.
¶ 20 First, uncertainty could result. See generally Lozano v. Montoya Alvarez, 572 U.S. ----, ----, 134 S.Ct. 1224, 1234, 188 L.Ed.2d 200 (2014) ("As a general matter, statutes of limitations ... foster the elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." (internal quotation marks omitted)). This is so because disputes over enforceability have arisen when-as here-parties have exchanged terms but not reduced their settlement to a single writing. See, e.g., DiFrancesco v. Particle Interconnect Corp., 39 P.3d 1243, 1248 (Colo.App.2001) ; Griego v. Kokkeler, 543 P.2d 729, 730 (Colo.App.1975). Consider a UIM insured who did not file within the three-year limitations period, believing that the limitations period had been extended by a binding settlement agreement, only to face the UIM insurer's defense that the period had expired because the UIM insured and the underinsured motorist's insurer had not reached agreement on all essential terms.
¶ 21 Second, and setting aside possible uncertainty over enforceability, such an agreement could extend the deadline for filing UIM claims beyond the additional two years provided. See Brown v. Am. Family Ins. Grp., 989 P.2d 196, 198 (Colo.App.1999) ("The salutary purpose of the statute of limitations is to promote justice by discouraging long delays, prohibiting the prosecution of stale claims, and providing closure to the parties." (internal quotation marks omitted)). Such an extension could occur because the additional two years runs from the date "the insured received payment of the settlement." But a settlement agreement that postponed payment *588 -such as until the first day of the next fiscal or calendar year-would significantly extend that two year period. See Gutter v. Seamandel, 103 Wis.2d 1, 308 N.W.2d 403, 414 (Wis.Ct.App.1981) ("Statutes creating limitations are to be reasonably and fairly construed, but should not be extended by [judicial] construction." (internal quotation marks and alterations omitted)). Here, the record does not show when Progressive was obligated to pay, after State Farm consented.
¶ 22 For these reasons, and even assuming that Stoesz and Progressive entered into a binding settlement agreement,[2] this agreement did not constitute payment under subsection (1)(b).[3]
3. Absurd Result
¶ 23 Undaunted, Stoesz argues that excluding a binding settlement agreement from the meaning of "payment" leads to an absurd result-insureds having to file "unnecessary lawsuits to preserve already settled claims," pending receipt of the settlement funds. But Stoesz creates a false dilemma because filing suit against the underinsured motorist is not the only option for a UIM insured who is negotiating a settlement with the underinsured motorist. Suppose the UIM insured in this situation approached the UIM insurer and requested tolling, pending its approval of the liability settlement and receipt of the proceeds. Because a reasonable settlement would avoid the risk to the UIM insurer that its exposure may increase because of an unsuccessful lawsuit against the underinsured motorist, the insurer would be motivated to agree.
¶ 24 In any event, had the General Assembly intended for preservation to occur based on a binding settlement agreement, it could have said so. See People v. Moore, 2013 COA 86, ¶ 14, 338 P.3d 348 ("[H]ad the legislature intended that the statute cover victims who were not public employees, it could have done so by express language...."). And requiring a party to preserve an underlying bodily injury claim by commencing an action against the underinsured motorist-if payment of the settlement has not yet occurred-is not absurd. See Dep't of Transp. v. City of Idaho Springs, 192 P.3d 490, 494 (Colo.App.2008) ("We ... will disregard unambiguous statutory language only when the resultant absurdity is so gross as to shock the general moral or common sense." (internal quotation marks omitted)). Requiring that an action be filed to toll the statute hardly defies common sense. After all, "the filing of the original complaint tolls the statute of limitations" even if the complaint is not served. Garcia v. Schneider Energy Servs., Inc., 2012 CO 62, ¶ 12, 287 P.3d 112.
IV. The Limitations Period Was Not Tolled as to State Farm
¶ 25 The e-mail exchange between Stoesz's counsel and Progressive included a "confirmation of your request to waive any statute of limitations defenses." Stoesz argues that her claim against State Farm is not barred under section 13-80-107.5(1)(b) because Progressive agreed to toll the statute of limitations for commencing an action against the underinsured motorist. See Lewis v. Taylor, 2014 COA 27M, ¶ 12, --- P.3d ---- ("[P]arties cannot waive a jurisdictional time limitation but may agree to toll a nonjurisdictional one.").
¶ 26 Stoesz does not point to any evidence in the record that Progressive had authority to waive defenses on behalf of State Farm or that State Farm even knew of Progressive's waiver on behalf of its insured. Stoesz cites no authority, nor are we aware of any in Colorado, suggesting how-under these circumstances-Progressive's waiver could deprive State Farm of a defense based on the three-year limitations period. Thus, because *589 the tolling agreement was only between Progressive and Stoesz, it had no effect on State Farm. See generally Chandler-McPhail v. Duffey, 194 P.3d 434, 438 (Colo.App.2008) ("[A] nonparty generally cannot enforce contract provisions, or be bound by them, where the provisions do not specifically address the nonparty.").
V. Conclusion
¶ 27 The summary judgment is affirmed.
JUDGE GRAHAM and JUDGE TERRY concur.

Nor does either party rely on legislative history.

Before the trial court, State Farm did not dispute that the settlement agreement was binding as between Progressive and Stoesz.

We decline to address whether other scenarios that Stoesz raises-authorization to issue a settlement check or replacement of such a check that had been lost in the mail-would constitute payment because the record does not show when Progressive authorized issuance of the check, and it was issued after the three-year limitations period had expired. See Cacioppo v. Eagle Cnty. Sch. Dist. Re-50J, 92 P.3d 453, 467 (Colo.2004) (declining to answer "a hypothetical question about possible future interpretations to the law.").