The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 20, 2019

**2019COA92**

**No. 18CA0578, *Amir Massihzadeh v. Tom Seaver, in his official capacity as the Colorado Lottery Director; Colorado State Lottery Division, an agency of the State of Colorado* — Administrative Law — State Lottery Division — Prizes**

A division of the court of appeals considers whether, after the Colorado State Lottery Division discovered that two out of three winning lottery tickets were fraudulent, the plaintiff — the only innocent winner — is entitled to payment of the entire jackpot. In so doing, it considers whether the trial court properly dismissed the plaintiff's claim that he is entitled to the full jackpot because it is barred by section 44-40-113(4), C.R.S. 2018, which discharges the Colorado State Lottery Division of "all liability upon the payment of any prize . . ."

Based on the statute's plain language, the division concludes that the trial court properly dismissed the complaint because the

payment of one-third of the jackpot and the defendant's acceptance thereof constituted "any prize," sufficient to discharge the Division of liability.

Court of Appeals No. 18CA0578
City and County of Denver District Court No. 17CV33699
Honorable Brian R. Whitney, Judge

Amir Massihzadeh,

Plaintiff-Appellant,

v.

Tom Seaver, in his official capacity as the Colorado Lottery Director, and
Colorado State Lottery Division, an agency of the State of Colorado,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE TAUBMAN
Berger and Tow, JJ., concur

Announced June 20, 2019

Recht Kornfeld, P.C., Thomas M. Rogers III, Denver, Colorado; Lewis Roca
Rothgerber Christie LLP, Hermine Kallman, Denver, Colorado; The Law Offices
of Robert R. Duncan, LLC, Robert R. Duncan, Denver, Colorado, for Plaintiff-
Appellant

Philip J. Weiser, Attorney General, Robert H. Dodd, First Assistant Attorney
General, Cynthia P. Delaney, Assistant Attorney General, Robert Padjen,
Assistant Attorney General, Denver, Colorado, for Defendants-Appellees

¶ 1    What transpires when a person, who was one of three lottery winners, turns out to be the only true lottery winner following the discovery of fraud that invalidated the other two tickets?  Is the innocent winner entitled to the full jackpot?

¶ 2    Plaintiff, Amir Massihzadeh, seeks to resolve this question in appealing the district court's judgment granting the motion to dismiss of defendants, the Colorado State Lottery Division (the Division) and Tom Seaver, in his official capacity as Colorado Lottery Director.[1]  We agree with the district court that Massihzadeh's claims are barred by statute.

## I.    Background

¶ 3    Massihzadeh held one of three lottery tickets containing the combination of numbers matching those drawn in the November 23, 2005 Lotto for a $4.8 million jackpot.  After the Division director certified the results and all three tickets became "winning tickets,"

---

[1] Though Massihzadeh named Laura Solano, in her official capacity as Colorado Lottery Director, as a defendant, we note that Solano retired in 2018.  Tom Seaver was appointed to replace her during the pendency of this appeal.  *See* C.A.R. 43(c).

the Division distributed one-third of the jackpot to each winning ticket holder.

¶ 4    Tommy Tipton transferred the second winning ticket to another individual, and a third party, Cuestion de Suerte, LLC, redeemed the third winning ticket.  Thus, Massihzadeh, the other individual, and Cuestion de Suerte each received a lump sum of $568,990 — one-third of the jackpot prize after taxes.  This was the reduced amount based on the winners' elections to receive a lump sum payout rather than installments paid over the course of several years.

¶ 5    According to the 2005 Lottery Division Rules, the Division was required to hold a random drawing of six numbers, certify the drawing and announce the winning combination, and pay the prize. Lottery Rules 10.A.4, 10.A.5, 1 Code Colo. Regs. 206-1 (effective until Dec. 31, 2006).  The Division held what it believed was a random drawing, certified and announced the winning combination, and paid the prize it believed was due.

¶ 6    A decade later, the Division learned that the tickets redeemed by the other individual and Cuestion de Suerte were procured with

2

advance knowledge of the likely winning numbers as part of a scheme to defraud lotteries in multiple states.

¶ 7    Colorado contracts with the Multi-State Lottery Association (MUSL) to procure services for the state lottery, and it used these services to execute the November 2005 drawing. The MUSL provides computer software to facilitate lottery drawings to the lottery departments in its thirty-three member states.

¶ 8    In 2015, the Iowa Bureau of Investigation contacted the Division with information about its prosecution of Eddie Tipton, the Director of Information Security for MUSL, who manipulated a 2014 Iowa lottery drawing. As Director of Information Security, Tipton had unfettered access to the computer software used to conduct lottery drawings. Before the November 2005 drawing in Colorado, Tipton manipulated the software to defraud the lottery. He then accessed the software for the November 23, 2005 Colorado drawing and transferred what he forecasted to be the winning combination to his brother, Tommy Tipton, who supplied them to a third party. Both Tommy and the third party purchased "manual play" tickets with the numbers provided by Tipton for the Colorado Lottery drawing in November 2005.

¶ 9     Iowa prosecutors filed two criminal complaints against Tipton — one for manipulation of the 2014 Iowa drawing and a second for engaging in an ongoing criminal enterprise to influence other state lotteries.  They also charged Tommy with aiding and abetting thefts. The Tipton brothers pleaded guilty to the Iowa charges in June 2017.  The State of Colorado agreed not to prosecute the brothers in exchange for a restitution agreement from Tipton to pay $1,137,980 (the total amount paid out to the two holders of the fraudulent tickets) and another agreement with Tommy to be jointly and severally liable for $568,990 of that amount.

¶ 10    Massihzadeh filed suit in September 2017 after learning of the manipulation of the November 2005 lottery drawing.  He alleged breach of contract by the Division, seeking the other two-thirds of the jackpot, with interest.  As noted, the Division successfully moved to dismiss the complaint for failure to state a claim for relief.[2]

---

[2] The Division also moved to dismiss the complaint under the Colorado Governmental Immunity Act, section 24-10-106, C.R.S. 2018, because the claim allegedly sounded, or could sound, in tort. The district court rejected that argument, and that ruling was not appealed.

## II. Statutory Interpretation

¶ 11     Massihzadeh contends, among other things, that the district court erred in granting the motion to dismiss because section 44-40-113(4), C.R.S. 2018,[3] does not preclude his claim against the Division; it only pertains to claims against the Division by third parties. We disagree.

### A. Standard of Review

¶ 12     We review de novo questions of statutory interpretation. *Goodman v. Heritage Builders, Inc.*, 2017 CO 13, ¶ 5, 390 P.3d 398, 401.

### B. Applicable Law

¶ 13     Questions of statutory interpretation necessitate, first and foremost, consideration of the statutory text as a whole, giving "consistent, harmonious, and sensible effect to all of its parts and avoiding constructions that would render any words or phrases

---

[3] Prior to 2018, the statute at issue was located in section 24-35-212(3), C.R.S. 2017, and contained substantially the same text as contained in the current version. *See* Ch. 31, sec. 1, 2018 Colo. Sess. Laws 354. Thus, the district court's order and the parties' briefs refer to section 24-35-212(3); however, we will refer to the current statute for purposes of this opinion.

superfluous or lead to illogical or absurd results." *Pineda-Liberato v. People*, 2017 CO 95, ¶ 22, 403 P.3d 160, 164.  Therefore, if the statutory language is clear and unambiguous, we do not engage in further interpretive analysis.  *Snyder Oil Co. v. Embree*, 862 P.2d 259, 262 (Colo. 1993).

¶ 14     Section 44-40-113(4) provides, "The [D]ivision shall be discharged of all liability upon the payment of any prize pursuant to this article 40."  The related rules in the Code of Colorado Regulations provide that "[t]he Director's decision shall be final and binding with respect to the payment of all [p]rizes."  Lottery Rule 10.9(I), 1 Code Colo. Regs. 206-1.[4]  Other regulations state that the "[p]ayment of any [p]rize shall be made to the holder of the [j]ackpot [t]icket.  All liability of the State, its officers and employees, and the Commission shall terminate upon payment."  *Id.* at 10.9(L).[5]

---

[4] Formerly, Lottery Rule 10.4(j) provided, "[t]he Director's decision with respect to the validation and payment of any prize, whether during an On-Line game or any drawing related thereto, shall be final and binding upon all participants in the lottery."  1 Code Colo. Regs 206-1 (effective until Aug. 30, 2010).  Because the language in the current regulation is substantially similar, we refer to the current regulation for purposes of this opinion.

[5] Formerly, Lottery Rule 10.4(m) provided, "[p]ayment of any prize may be made to the holder of the Lottery On-Line ticket, and all

6

## C. Analysis

¶ 15    The statute provides that the payment of *any* prize to Massihzadeh released the Division from any liability associated with the payment of the prize.  *See* § 44-40-113(4); Lottery Rule 10.9(I), 1 Code Colo. Regs. 206-1.

¶ 16    "Payment" is not defined in the statute.  Accordingly, we look to dictionary definitions to ascertain its meaning.  *See Stoesz v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 86, ¶ 11, 410 P.3d 583, 586.

¶ 17    Black's Law Dictionary 1309 (10th ed. 2014) defines "payment" as "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation."  *See Stoesz*, ¶ 11, 410 P.3d at 586.  Consequently, the term "payment" necessarily includes acceptance by the prizewinner.  Thus, implicit in the statutory language is the prizewinner's ability to reject payment if the amount tendered by

---

liability of the State, its officers and employees, and the Commission terminates upon such payment."  1 Code Colo. Regs 206-1 (effective until Aug. 30, 2010).  We conclude that the language in the current regulation is substantially similar and refer to the current regulation for purposes of this opinion.

the Division is incorrect. Application of this definition prevents the absurd result that if the Division tenders a check for $10 on a multi-million-dollar prize, the Division is statutorily released from liability. Only when the prizewinner accepts the tendered prize has payment been made, and only then does the statute discharge the Division of liability.

¶ 18 It is uncontested that the Division tendered the prize to Massihzadeh — computed based on everyone's then understanding that there were three winning tickets. It is also uncontested that Massihzadeh accepted the tendered prize.

¶ 19 These facts inexorably lead to the conclusion that the Division was released from all further liability to Massihzadeh. Accordingly, it is of no consequence that the other winning tickets were later deemed invalid because Massihzadeh's acceptance of one-third of the prize, without challenging it, discharged the Division's liability. Thus, the plain language of section 44-40-113(4) precludes Massihzadeh's claim against the Division.

¶ 20 Nevertheless, Massihzadeh attempts to avoid this result by arguing that he had not been paid the "prize." However, the statute prescribes that, upon payment of "*any* prize," the Division's liability

8

is discharged. § 44-40-113(4) (emphasis added). Since the phrase "any prize" is undefined, we accord "any" its meaning when used as an adjective in a statute — "all." *See Stamp v. Vail Corp.*, 172 P.3d 437, 447 (Colo. 2007). Therefore, we conclude that the acceptance of payment of one-third of the jackpot to by Massihzadeh constituted a payment of "any prize," sufficient to trigger the Division's immunity.

¶ 21 Notwithstanding the language of the statute, Massihzadeh finally contends that the statute only applies to claims by third parties. Although the statute prescribes procedures to address claims to a portion of a prize by third parties, it also unambiguously addresses payments to the winner of a prize. For instance, subsections 44-40-113(1) and (2) discuss assignment of a prize to third parties. However, section 44-40-113(5) pertains to winning ticket holders under eighteen who are ineligible to claim a prize — this does not concern third parties, nor does section 44-40-113(4). To the extent that Massihzadeh relies on *Dawson v. Multi-State Lottery Ass'n & Iowa Lottery Authority*, No. 05771 LACL134527 (Iowa Dist. Ct., Polk Cty. Oct. 12, 2016), to assert that he is entitled to the full jackpot, we reject his argument. In *Dawson,* the plaintiff

sued MUSL and the Iowa Lottery Authority (ILA) to recover unclaimed prize money from a previous drawing that was supposed to be paid into the jackpot to be awarded for the drawing he won. *Id.* He based his claim on the language of Iowa Code section 99G.31(1) (2018), which stated, in pertinent part, "The chief executive officer shall award the designated prize to the holder of the ticket." *Id.* The plaintiff withstood the ILA's motion to dismiss based on immunity because the court determined that the "designated prize" may include fraudulently "won" but unclaimed funds, and the statute discharged the ILA from liability "upon payment of a prize." Iowa Code § 99G.31(2)(f). The ILA had failed to return an unclaimed prize to the jackpot, and as the sole winner of the lottery, the plaintiff was entitled to the entire jackpot as his "designated prize." Iowa Code § 99G.31(1). Here, the statutory language reads differently. The Division is discharged from all liability upon payment of any prize — not a "designated prize," and

Massihzadeh's receipt of one-third of the jackpot was clearly "any prize."[6]

¶ 22    Because we resolve the appeal based on the plain language of section 44-40-113(4),[7] we need not address Massihzadeh's contract claim.

## III.    Conclusion

¶ 23    Accordingly, the judgment is affirmed.

JUDGE BERGER and JUDGE TOW concur.

---

[6] The Division also argues that the prize is based on the number of matching tickets, regardless of whether any of those tickets is later invalidated.  We need not address that argument because we resolve the dispute based on the plain language of the statute.

[7] Massihzadeh argues that the district court erroneously ruled that he waived his claim against the Division by accepting one-third of the jackpot.  However, we disagree with that characterization.  The district court stated in its order that "upon acceptance and appropriating a prize without challenging the propriety of that prize, [Massihzadeh's] own actions resulted in the waiver of liability against the [Division] as it related to his contract."  As we understand it, the district court intended to equate "waiver" with the discharge of liability associated with section 44-40-113(4), C.R.S. 2018.