23CA1197 Interest of Black 05-22-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1197
City and County of Denver Probate Court No. 12PR1772
Honorable Elizabeth D. Leith, Judge

---

In the Interest of Joanne Black, a Protected Person.

Bernard Black, individually and as Suspended Trustee for the Supplemental Needs Trust for the Benefit of Joanne Black,

Appellant,

v.

Jeanette Goodwin, Conservator,

Appellee.

---

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Yun and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 22, 2025

---

DiPonio & DiPonio, LLC, Lisa DiPonio, Littleton, Colorado, for Joanne Black

Gayle Y.L. Young, Guardian Ad Litem

Bernard Black, Pro Se

Wade Ash LLC, Jody Pilmer, Greenwood Village, Colorado, for Appellee

¶ 1    Bernard Black was removed as the conservator for his sister, Joanne Black, in 2015, after the probate court discovered that he had stolen more than a million dollars from her.  Rather than repay the stolen money, as ordered by the court, Black embarked on a campaign of scorched earth multi-jurisdiction litigation against Joanne[1] that has persisted for a decade.

¶ 2    In 2023, as the probate court was fashioning a remedy that would finally allow Joanne to recoup some of the stolen funds, Black moved to retroactively terminate Joanne's conservatorship, based on a New York order issued in 2016.   The probate court denied the motion, and Black appeals.

¶ 3    Termination of a conservatorship may only be sought by the protected person, the conservator, or a "person interested in a protected person's welfare." § 15-14-431(3), C.R.S. 2024.  Because Black is none of those, we conclude that he lacked standing to move for termination of Joanne's conservatorship.  Accordingly, we affirm the probate court's order, albeit on different grounds.  *See Laleh v. Johnson*, 2017 CO 93, ¶ 24 (an appellate court can affirm a trial

---

[1] Because the siblings share a last name, for clarity's sake, we refer to Joanne Black by her first name.

court's order on any ground supported by the record, whether relied upon or even considered by the trial court).

## I.     Background

¶ 4     We recount the procedural history of the case in some detail to provide context for our decision.

¶ 5     In 2012, the Black siblings' mother died.  She left Joanne, who suffers from a mental health disorder, approximately $3 million from payable-on-death (POD) bank accounts and directed that the remainder of her estate be divided two-thirds to Joanne, to be placed in a special needs trust (SNT), and one-third to Black.

¶ 6     Black, a law professor, filed a petition for a conservatorship over Joanne in the Denver probate court, ostensibly to protect Joanne's inheritance, but in actuality to steal much of it.  Through misrepresentations, he obtained court approval to disclaim the POD designations, and then he transferred some of the funds into the SNT, of which he was a co-trustee, and some into a separate trust, the Issue Trust, for his and his children's benefit.

¶ 7     In 2015, after a four-day evidentiary hearing, the probate court determined that Black had breached his fiduciary duties and committed civil theft by appropriating $1.5 million of Joanne's

2

assets for his own benefit. The court removed Black as conservator but, rather than voiding the disclaimer (and recovering the funds from the trusts), it elected to surcharge Black. After trebling the damages pursuant to statute, the court entered judgment against Black for $4.6 million. A division of this court affirmed the judgment. *See Black v. Black*, 2018 COA 7 (*Black I*).

¶ 8 Black has neither paid the judgment nor returned the stolen funds held in the SNT and the Issue Trust. Instead, he has spent the last ten years attempting to place the trusts' assets beyond Joanne's reach so as to permanently deprive her of the money her mother set aside for her long-term care.

¶ 9 After the judgment was entered, Black moved Joanne's funds into twenty-five different accounts in the names of one or more of the trusts — actions the probate court likened to a "shell game."

¶ 10 In 2016, Black sued Joanne in federal district court in Illinois, seeking a declaration that he (and his son, whom he installed as a co-trustee) controlled the Issue Trust assets "free of restraint," even though the Issue Trust assets were derived entirely from the conservatorship estate, and even though the probate court had by

then frozen all of Joanne's assets. *See Black v. Black*, No. 1:16-cv-1763 (N.D. Ill. dismissed July 13, 2016)

¶ 11     When Joanne asked the probate court to disburse money from the SNT so she could hire a lawyer to defend her in the Illinois lawsuit, Black objected by challenging the probate court's jurisdiction over the SNT. *See Black v. Black*, 2020 COA 64M, ¶¶ 55-59 (*Black II*) (holding that the probate court has jurisdiction over the funds in the SNT and the Issue Trust).

¶ 12     In 2017, Black's wife, who is also a law professor, brought an action in Illinois state court, asserting that the trusts owed her nearly half a million dollars. Within a week, Black and his son, as trustees, consented to the entry of judgment. The Illinois Appellate Court later vacated the consent judgment, concluding that it was the "product of fraud or collusion." *Litvak v. Black*, 2019 IL App (1st) 181707, ¶¶ 24-27.

¶ 13     In 2018, after Black funneled more than $250,000 out of the SNT in violation of the probate court's order, the court suspended Black and his son as trustees of all trusts benefiting Joanne. The court found Black's actions "shocking," as they served only to "reduce or eliminate the funds that are due to Joanne Black

4

apparently for no reason." On appeal, the division agreed that Black's suspension was proper "[i]n light of the emergency situation resulting from [Black's] transfer of SNT funds . . . and his attempts to permanently deprive Joanne's conservatorship of assets through consent judgments." *Black II*, ¶ 110.

¶ 14 A few months later, Black threatened to take action against the Illinois bank holding the trust assets if it complied with the probate court's orders. That communication prompted the bank to file an interpleader action in federal district court in Illinois, which is ongoing and has complicated matters for the parties in the probate court proceedings. *See JPMorgan Chase Bank, N.A. v. Black,* No. 18-cv-03447, 2021 WL 4459482 (N.D. Ill. Sept. 29, 2021) (unpublished opinion).

¶ 15 After it became apparent that Black would never pay the judgment, the probate court determined that equity required voiding the disclaimer transaction so that the stolen funds could be transferred out of the trusts. As the court explained, the inequity of keeping the disclaimer in place "is shown by the continuing litigation [by Black] which continues to burden Joanne Black, and which prevents her funds from being used for her care." Not

surprisingly, Black has attempted to thwart that outcome at every turn.

¶ 16 First, he filed two lawsuits in Illinois, without notice to Joanne, seeking a declaratory judgment that the disclaimer is irrevocable. *See Black v. Black*, No. 2021 CH 6049 (Ill. Cir. Ct. dismissed 2021) (SNT action); *Black v. Black*, No. 2021 CH 2952 (Ill. Cir. Ct. default judgment vacated Oct. 17, 2022), *aff'd Black v. Black*, 2024 IL App (1st) 221667, ¶¶ 1-3 (Issue Trust action).

¶ 17 When that strategy failed, Black tried to remove Joanne's motion to unwind the disclaimer to federal court in Colorado. The magistrate judge found that "the removal was in bad faith, vexatious, and without reasonable basis," done for the purpose of delaying the probate court's efforts to "reacquire funds that belong to Joanne." *Black v. Black*, No. 22-cv-03098-DDD-NRN, 2023 WL 1989793, at *16, 19 (D. Colo. Feb. 14, 2023) (unpublished report and recommendation). In adopting the magistrate's recommendation, the federal district court underscored the egregiousness of Black's behavior with respect to Joanne, warning that his conduct was likely to be "taken into account by [a] higher authority when the time comes." *Black v. Black*, No. 22-cv-03098-

DDD-NRN, 2023 WL 3976422, at *5 (D. Colo. Apr. 5, 2023) (unpublished opinion); *see also Black v. Black*, No. 23-1377, 2024 WL 4616104, at *1-2 (10th Cir. Oct. 30, 2024) (unpublished opinion) (affirming the imposition of sanctions against Black for his "frivolous and baseless attempt at removal for the purpose of interfering with an ongoing state probate proceeding").

¶ 18　After Black's frivolous removal attempt was dismissed, the parties returned to litigating the issue of whether the probate court could vacate its earlier order approving the disclaimer. During this period, Joanne filed a "personal statement" in which she told the probate court that her "greatest wish" was to "have [her] brother and his family completely out of [her] life." She referenced his "endless legal pursuit to take [her] money" and expressed fear at "his plans for [her]."

¶ 19　In the meantime, the court set a hearing on the motion to vacate the court's order approving the disclaimer. The day before the scheduled hearing, Black filed a motion to terminate the conservatorship. The gist of the motion is that the probate court lost subject matter jurisdiction over the conservatorship seven years ago, when a New York court declined to appoint a guardian for

Joanne. *See* Am. Decision & Ord., In the Int. of Joanne Black, No. 80253-14 (N.Y. Sup. Ct., June 7, 2016). The probate court denied the motion, finding that termination of the conservatorship was not in Joanne's best interests and that the motion had been filed in bad faith for the illegitimate purpose of delaying the proceedings.

## II. Motion to Terminate the Conservatorship

¶ 20 Black contends that the probate court erred by denying his motion to terminate the conservatorship. He says, without acknowledging the irony, that the conservatorship is "deeply improper" because it "harms" Joanne's "financial well-being." According to Black, because a New York court found Joanne to be competent in 2016, all of the probate court's orders issued after that date, including, presumably, the order issued in May 2023 reversing the disclaimer, are void for lack of subject matter jurisdiction.

¶ 21 We conclude that Black lacks standing to move for termination of the conservatorship.

### A. Legal Principles and Standard of Review

¶ 22 Standing is a justiciability doctrine that tests a litigant's right to raise legal arguments or claims. *City of Greenwood Village v.*

*Petitioners for Proposed City of Centennial*, 3 P.3d 427, 436 (Colo. 2000). Because standing implicates the court's subject matter jurisdiction, it can be raised at any time. *Aurora Pub. Schs. v. A.S.*, 2023 CO 39, ¶¶ 24 n.9, 25. Joanne's conservator raised the issue of standing in her answer brief, but even if she had not, we may raise jurisdictional defects sua sponte. *See In re Marriage of Thomas*, 2021 COA 123, ¶ 22. "If a court determines that standing does not exist, then it must dismiss the case." *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 7.

¶ 23 Standing presents a question of law that we review de novo. *Roane v. Elizabeth Sch. Dist.*, 2024 COA 59, ¶ 23. Whether Black has standing to seek termination of the conservatorship turns on the meaning of section 15-14-431(3). The interpretation of a statute is also a question of law subject to de novo review. *Roane*, ¶ 23.

## B. Discussion

¶ 24 Black brought his motion to terminate Joanne's conservatorship as an "interested person" and a "trustee," but also "in his personal capacity as [Joanne's] brother and therefore an interested person in her welfare under Colorado law."

9

¶ 25    The probate code confers standing, in different contexts, on both an "interested person," § 15-10-201(27), C.R.S. 2024, and a "person interested in a protected person's welfare," § 15-14-431(3).

¶ 26    Generally, an "interested person" has standing in a probate proceeding, but even so, who qualifies as an interested person depends on the particular matter being resolved and is therefore "highly context dependent." *In re Estate of Little*, 2018 COA 169, ¶ 38; § 15-10-201(27).  An interested person includes heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against a protected person that may be affected by the proceeding.  § 15-10-201(27).

¶ 27    In his motion, Black says he is a "trustee."  But the probate court first suspended and then removed him as a trustee of any trust holding conservatorship assets.  And even if Black otherwise qualifies as an "interested person" for most purposes under the probate code, to have standing to seek termination of a conservatorship, he must be "a protected person, a conservator, or another person interested in [the] protected person's welfare."

¶ 28    Black does not dispute that Joanne is the protected person in this proceeding and that he is not her conservator.  So the only

10

question presented is whether he qualifies as a person interested in Joanne's welfare, such that he should be permitted to act on her behalf in seeking to terminate the conservatorship.

¶ 29    The probate code does not define the term "person interested in a protected person's welfare." We must presume it has a different meaning than "interested person," or else the legislature would not have used a different term to describe the standing requirement under section 15-14-431(3). *See Bd. of Cnty. Comm'rs v. City of Woodland Park*, 2014 CO 35, ¶ 10 (In construing a statute, the court presumes that the legislature's "use of different terms signals [its] intent to afford those terms different meanings."); *see also* § 15-14-318(2), C.R.S. 2024 (limiting those who may petition the court to terminate or modify a guardianship to the "ward, a guardian, or another person interested in the ward's welfare").

¶ 30    To determine what the legislature intended by the term "person interested in a protected person's welfare," we examine its language, giving the words in that phrase their ordinary and commonly accepted meaning. *See Goodman v. Heritage Builders, Inc.*, 2017 CO 13, ¶ 7; *see also Dillabaugh v. Ellerton*, 259 P.3d 550,

552 (Colo. App. 2011) ("The absence of a statutory definition does not create ambiguity if, because the undefined phrase is one of common usage, a court can discern its usual and ordinary meaning."). We avoid a construction that would lead to illogical or absurd results. *Miller v. Crested Butte, LLC*, 2024 CO 30, ¶ 23.

¶ 31 To be "interested" means to have "a feeling of concern, sympathy, or curiosity." Black's Law Dictionary 969 (12th ed. 2024); *see also* Merriam-Webster Dictionary, https://perma.cc/3TSC-DMTA (defining "interest" as "a feeling that accompanies or causes special attention to something or someone: concern"). "Welfare" is defined as "one's condition in regard to health, happiness, or prosperity," Webster's Third New International Dictionary 2594 (2002), or "[w]ell-being in any respect," Black's Law Dictionary at 1915. *See also Massihzadeh v. Seaver*, 2019 COA 92, ¶ 16 (courts may look to dictionary definitions to ascertain an undefined statutory term).

¶ 32 We discern no ambiguity in the statute's language. Giving the words "interested" and "welfare" their plain and commonly accepted meaning, we conclude that the legislature intended to limit the class of people who can seek to terminate a conservatorship (in

addition to the protected person and the conservator) to those who have a genuine concern for the protected person's well-being, including the person's health, happiness, and prosperity.

¶ 33     Because the petitioner must establish standing, *see TABOR Found. v. Colo. Dep't of Health Care Pol'y & Fin.*, 2020 COA 156, ¶ 30, Black has the burden to show that he is acting out of genuine concern for Joanne's well-being.  To determine whether he has made such a showing, we consider the particular circumstances of the case.  *In re Estate of Edwards*, 794 P.2d 1092, 1093 (Colo. App. 1990).  Sometimes, the factual circumstances could lead to differing conclusions about the petitioner's concern for the protected person's welfare; in that case, the trial court should hold an evidentiary hearing and resolve any conflicts in the evidence.  *Id.* at 1094.  But given the record in this case, we see no need for a hearing.

¶ 34     The facts concerning Black's conduct have been determined by various courts and are not in dispute.  The probate proceedings were premised on Black's deception and fraud, initiated for the very purpose of serving his own interests at the expense of Joanne's.  He

has remained her adversary ever since, implementing scheme after scheme to prevent her from recovering what is rightfully hers.

¶ 35     The probate court considers Black's treatment of Joanne "shocking." A division of this court previously concluded that the probate court record amply supports a determination that Black's conduct is "detrimental to Joanne's interest." *Black v. Black*, slip op. at ¶ 19 (Colo. App. Nos. 20CA1937 & 21CA0787, Apr. 28, 2022) (not published pursuant to C.A.R. 35(e)).

¶ 36     The fact that Black is Joanne's brother, as he notes in his motion, does not, sadly, change our view. True, that relationship usually implies concern about the other person's well-being, but in this case it does not. And if the legislature had intended to confer standing in this context on all siblings, it would have said so. *See, e.g., Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."). But instead, the General Assembly appears to have accounted for the unfortunate reality that family members do not always look out for each other's best interests.

¶ 37    Black is the antithesis of a person interested in Joanne's welfare.  Joanne is not the beneficiary of her brother's concern and care; she is his "victim."  *Black*, 2023 WL 1989793, at *17.

¶ 38    Considering the record as a whole, we conclude, as a matter of law, that Black does not qualify as a "person interested in [the] protected person's welfare" under section 15-14-431(3).  He therefore lacks standing to seek termination of the conservatorship.

### III.    Appellate Attorney Fees

¶ 39    The conservator requests her appellate attorney fees on the ground that Black's appeal is substantially frivolous, substantially groundless, or substantially vexatious.  § 13-17-102(6), C.R.S. 2024; C.A.R. 39.1.

¶ 40    We agree that the appeal is frivolous.  An appeal is frivolous as filed if "the proponent can present no rational argument based on the evidence or law."  *Averyt v. Wal-Mart Stores, Inc.*, 2013 COA 10, ¶ 43 (citation omitted).  Here, Black presented no argument to support his position that he had standing under section 15-14-431(3).  And for the reasons we have explained, no rational argument exists.

¶ 41     The appeal is also vexatious.  *See In re Estate of Shimizu*, 2016 COA 163, ¶ 26 ("[A]n action is substantially vexatious if [it is] brought or maintained in bad faith" or it demonstrates stubborn litigiousness.) (citation omitted).  After Black's wrongdoing was discovered by the probate court, he "launched multiple lawsuits across multiple jurisdictions to slow or reverse the adverse findings against him in Colorado, losing practically every case." *Black v. Dain*, No. 16-cv-1238, 2023 WL 12058366, at *20 (E.D.N.Y. Mar. 31, 2023) (unpublished opinion).  He continues to "engage in procedural gymnastics to avoid legitimate court judgments [and] impose undue and unnecessary legal costs on Joanne's conservator . . . .  He has imposed significant burdens on multiple courts for no legitimate or justified reasons." *Black*, 2023 WL 1989793, at *17.

¶ 42     Black persists in his stubbornly litigious conduct even though he has lost practically every case, and even though multiple courts have admonished or sanctioned him, because winning is not the goal — his goal is simply to inflict pain, emotional and financial, on Joanne and the other parties to this proceeding.  The motion, which

purports to serve Joanne's interests, and the appeal are the definition of bad faith.

¶ 43     Pursuant to C.A.R. 39.1, we exercise our discretion to remand the case to the probate court to determine the amount of reasonable appellate attorney fees to be awarded to the conservator.

## IV.   Disposition

¶ 44     The order is affirmed.  The case is remanded to the probate court to determine and award the conservator reasonable appellate attorney fees.

JUDGE YUN and JUDGE KUHN concur.